UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Adam D. Nichols

    v.                                          Civil No. 11-cv-197-JD
                                                  Opinion No. 2012 DNH 107

Michael J. Astrue, Commissioner,
Social Security Administration


O R D E R

     Adam D. Nichols seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for social security disability insurance benefits under Title II and supplemental security income under Title XVI.  Nichols contends that the Administrative Law Judge ("ALJ") erred in failing to find that Nichols met or equaled Listing 1.04A under 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Commissioner moves to affirm the decision.


Background

    Nichols applied for social security benefits on December 18, 2008, alleging a disability since September 5, 2007, due to a ruptured disc with nerve impingement and atrophy of his left calf.  Nichols reported that he injured his back by lifting a

heavy object at work.  After that incident, he had low back pain that radiated to his left leg and that was made worse by bending or lifting.

Nichols had an MRI done at Exeter Hospital that was reviewed on September 25, 2007, by Dr. Manuel Sanchez, a pain specialist at Interventional Spine Medicine.  Dr. Sanchez recorded that the MRI showed "degenerative changes at L4-5, L5-S1 with disc protrusion to the left, resulting in compression of the nerve root of the lateral recess and annular tears at the 4-5 and 5-S1."  On physical examination, Dr. Sanchez found that Nichols had positive signs for pain limitation with straight raising of his left leg and sensory changes in his left thigh and calf.

At an appointment with Dr. Stefan Kim in October of 2007, Nichols reported that he continued to have back pain and had tried physical therapy and five epidural steroid injections.  Through a physical examination, Dr. Kim found that Nichols was not in acute distress, had full motor strength, and showed no evidence of sensory deficits.  An MRI of Nichols's back showed degenerative disc disease at L4-5 and L5-S1.  Dr. Kim concluded that Nichols's symptoms were consistent with mechanical back pain and recommended physical therapy.

On December 14, 2007, Dr. Peter J. Dirksmeier, an orthopedic surgeon, examined Nichols and noted his obvious discomfort, very

limited ability to walk and change positions, and extraordinarily stiff range of motion in the lumbar region.  Dr. Dirksmeier also noted that straight leg raising caused back pain and exacerbated Nichols's left leg pain and that he had decreased sensory reaction to pin prick in the left L4, L5, and S1 areas.  In March of 2008, Dr. Dirksmeier reported the same examination results, noted that Nichols's gait was slow and shuffling, and gave his opinion that Nichols probably suffered from an acute annular tear in at least one of his lower lumbar discs.

Nichols was treated at the Pain Care Center from January of 2008 through October of 2008.  During that time, his symptoms improved.  Nichols was also treated at Access Sports Medicine and Orthopedics beginning in March of 2008.  Dr. Gary Fleischer found that Nichols was in no acute distress and retained full motor strength in his legs and recommended physical therapy.

From March to May of 2008, Nichols was also treated at Massachusetts General Hospital.  He was diagnosed with lumbosacral disc disease.  An MRI of Nichols's lumbar spine done on May 6, 2008, showed mild disc space narrowing at L4/5 and L5/S1 with spine alignment maintained.  The radiologist wrote that Nichols had degenerative changes with disc protrusion at L4-5 and L5-S1, abutting the nerve roots.  Dr. Kirkham Wood, an orthopedic surgeon, evaluated Nichols on May 6, 2009, and noted

that Nichols was able to do only twenty degrees of lumbar flexion and extension, with significant pain, could do heel to toe walking but gingerly, and had positive result on straight left leg raising.  In the discharge note, Dr. Elizabeth Temin wrote that the MRI showed a normal spinal cord but also showed discs bulging at L4-5 and L5-S1 with impingement on the nerve root.

On July 7, 2009, Nichols was evaluated by Dr. Sandra K. Vallery, a state agency psychiatric consultant.  Nichols told Dr. Vallery that after he hurt his back he began to experience panic attacks.  Dr. Vallery did a mental status examination and found that Nichols was able to interact normally, understand and remember instructions, tolerate work stress, but had some difficulty with task completion.  Dr. Vallery diagnosed back problems, panic disorder without agoraphobia, and an adjustment disorder.  She noted that Nichols was taking Ativan for anxiety and that his prognosis was good.

On July 17, 2009, Dr. Burton Nault, a state agency physician, reviewed Nichols's medical records and completed a physical residual functional capacity assessment.  Dr. Nault found that Nichols could occasionally lift and/or carry ten pounds, could frequently lift and/or carry less than ten pounds, could stand or walk for at least two hours in an eight-hour work day, could sit for six hours, and was not limited in his ability

to push or pull.  He also found that Nichols was limited to doing postural activities only occasionally but had no limitations in manipulative and communicative activities.  Dr. Nault found no environmental limitations.

On September 30, 2009, Dr. Fleischer examined Nichols and found slight abnormalities and some weakness but full strength in his legs.  Following an examination on January 11, 2010, Dr. Fleischer made the same physical findings and also concluded that Nichols could return to work but was restricted from lifting more than twenty pounds, could do only limited bending and twisting, could not drive, and could stand up to forty-five minutes in an hour.  In February, Dr. Fleischer found that Nichols's straight leg raising test was negative.  Dr. Fleischer's examination notes through 2010 show that Nichols's back was normal and do not include any significant symptoms.

On October 31, 2010, Dr. Dennis Rork, a physician with Londonderry Family Practice, completed a lumbar spine residual functional capacity assessment for Nichols.  Dr. Rork diagnosed degeneration of lumbar discs with radiculopathy and wrote that Nichols was totally disabled by back and leg pain.  He assessed that Nichols could only sit, stand, or walk for less than two hours in a work day and could rarely lift even less than ten pounds.

A hearing before an ALJ was held on November 3, 2010. Nichols, who was represented by counsel, testified, and a vocational expert also testified. Nichols testified that he was disabled because of pain and that he was unable to bend, twist, lean, lift, or sit for long periods of time. He said that during the day he watched television with his children and prepared snacks for them or did internet research.

The ALJ asked the vocational expert if jobs existed that a person could do who was limited to lifting ten pounds occasionally, five pounds frequently, standing or walking for three hours in an eight-hour day, and sitting for six hours but could use his hands and feet to operate controls and push and pull and could occasionally do postural activities. The vocational expert testified that with those limitations the person could not do Nichols's past work but could work as a film touch-up inspector, an assembler, an escort vehicle driver, and a telephone solicitor.

The ALJ issued a decision on November 12, 2010, in which he found that Nichols retained the functional capacity to do sedentary work, with an ability to stand or walk for three hours and to sit for six hours in an eight-hour work day. He found that Nichols had a severe impairment due to degenerative disc disease of the lumbar spine but did not meet the criteria of

Listing 1.04.  Based on the residual functional capacity assessment, the ALJ found that Nichols could not return to his past work but could do the jobs identified by the vocational expert.  As a result, the ALJ concluded that Nichols was not disabled.  When the Decision Review Board did not complete its review within the time allowed, the ALJ's decision became the final decision of the Commissioner.

## Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Discussion

Nichols contends that the ALJ erred in finding that Nichols's back condition does not meet or equal the impairment at Listing 1.04A. Nichols also faults the ALJ's reliance on the opinions of the nontreating consultative physician, Dr. Nault. The Commissioner points to evidence supporting the ALJ's finding.

The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 & § 416.920.[1] At Step Three of the sequential analysis, the ALJ compares the medical evidence of the claimant's impairment "to a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990). "If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry." Id.; § 404.1520(a)(4)(iii).

To match a listed impairment, the claimant's medically determinable impairment must satisfy all of the listed criteria. § 404.1525(e). An impairment equals a listed impairment if the impairment "is at least equal in severity and duration to the criteria of any listed impairment." § 404.1526(a). The claimant

---

[1]The applicable regulations for Title II and Title XVI in this case are the same. See, e.g., Sullivan, 493 U.S. at 526 n.3.

bears the burden of showing that he has an impairment or combination of impairments that meets or equals a listed impairment.  <u>Torres v. Sec'y of Health & Human Servs.</u>, 870 F.2d 742, 745 (1st Cir. 1989).

The ALJ found that Nichols had a severe impairment due to degenerative disc disease of the lumbar spine.  Listing 1.04 pertains to certain listed disorders of the spine, including degenerative disc disease, that results in compromise of the nerve root or the spinal cord.  In addition, the impairment must meet one of three parts: A, B, or C.  Nichols contends that his impairment meets the criteria for Listing 1.04A, which provides as follows:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Nichols challenges the ALJ's finding at Step Three, arguing that the ALJ improperly relied on Dr. Nault's opinion and should have given more weight to the opinion of Nichols's treating physician, Dr. Dennis G. Rork.

In support of his finding at Step Three, the ALJ merely stated that "[t]here is no evidence" of the criteria necessary for Listing 104.  The ALJ did not cite record evidence to support

his conclusion. As Nichols points out in his motion to reverse and remand, the ALJ's bare statement is incorrect because the record does include evidence of each of the criteria of Listing 1.04A. Therefore, as stated, the ALJ's finding is wrong.

In response, the Commissioner argues that the record includes substantial evidence to support the ALJ's finding. Specifically, the Commissioner relies on Dr. Nault's statement that Nichols's degenerative disc disease was not severe enough to meet the criteria of a listed impairment and Dr. Nault's assessment that Nichols retained the capacity for sedentary work. The Commissioner also cites evidence that post dates Dr. Nault's opinion to support the ALJ's finding and contradicts the opinion of Dr. Rork, including the opinion of Dr. Fleischer, Nichols's treating orthopedic surgeon.

Ordinarily, the Commissioner cannot provide a post hoc rationale for the ALJ's erroneous findings. Van Blarcom v. Astrue, 2011 WL 2118643, at *4 (D.N.H. May 25, 2011); Larlee v. Astrue, 694 F. Supp. 2d 80, 84 (D. Mass. 2010). In some cases, however, remand is not necessary "if it will amount to no more than an empty exercise." Ward v. Comm'r of Social Security, 211 F.3d 652, 656 (1st Cir. 2000). Because the record does contain substantial evidence to support the ALJ's finding, despite his insufficient analysis at Step Three, remand is not required here.

See, e.g., Stratton v. Astrue, 2012 WL 1852084, at *10 (D.N.H. May 11, 2012); Phelps v. Astrue, 2011 WL 2669537, at *5 (D.N.H. July 7, 2011).

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 8) is denied. The Commissioner's motion to affirm (document no. 12) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                                                  /s/ Joseph A. DiClerico, Jr.
                                                                  Joseph A. DiClerico, Jr.
                                                                  United States District Judge

June 14, 2012

cc:  Robert J. Rabuck, Esquire
     D. Lance Tillinghast, Esquire

11